Roger Edward **HAMRICK**, Petitioner-Appellant,

v.

Louie L. **WAINWRIGHT**, Director, Division of Corrections, Respondent-Appellee.

No. 72–1303.

United States Court of Appeals,
Fifth Circuit.

Aug. 30, 1972.

Phillip A. Hubbart, Public Defender, 11th Judicial Cir. of Fla., Lewis S. Kimler, Asst. Public Defender, Miami, Fla. for petitioner-appellant.

Robert L. Shevin, Atty. Gen., Tallahassee, Fla., Joel D. Rosenblatt, Asst. Atty. Gen., Miami, Fla., for respondent-appellee.

Before TUTTLE, MORGAN and RONEY, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Roger Hamrick was convicted of four counts of armed robbery in a Florida state court. At the trial three employees testified that Hamrick was one of the men who robbed the Flagler Finance Company. On this habeas appeal Hamrick contends [1] that the in-court

---

1. There is no question of exhaustion of state remedies in this case since Hamrick raised this same contention on direct appeal from his state conviction. Ham-

identification by one of these witnesses should have been excluded from evidence because the witness had previously identified Hamrick's photograph which, Hamrick claims, was taken while he was being unlawfully detained under a vagrancy statute. The district court denied the petition. We affirm.

Hamrick's arrest came about in the following manner. On July 14, 1967, officer Harold J. Purcell observed Hamrick and two other black males driving around Coral Gables, Florida, in a rented automobile. Officer Purcell followed the automobile which was finally parked in a shopping center. One of the occupants got out of the automobile and Purcell recognized him as Oscar Valdez, a man who was wanted for armed robbery. Purcell approached Valdez and asked him for some identification. After producing a set of stolen identification cards Valdez admitted his true identity and Purcell arrested him for robbery. Officer Purcell then turned his attention to the automobile and the remaining two men, one of which was Hamrick. Upon request Hamrick and the other man produced proper identification and stated that they were at the shopping center to make some purchases. Nevertheless, Purcell placed both men under arrest for vagrancy in violation of Florida Statutes § 856.02, F.S.A.,[2] and transported them to the station house.

As a part of the routine booking procedure Hamrick's picture was taken by the Coral Gables police department. This photograph was subsequently exhibited to three employees of the Flagler Finance Company who had been on duty when the company was robbed by three men. Although two of the employees were unable to recognize Hamrick's photograph, the third employee, William Brookhart, identified Hamrick as a participant in the robbery.

At Hamrick's trial all three employees made in-court identifications by testifying that Hamrick was one of the men who robbed the finance company. Hamrick contends before this court that the state trial judge committed reversible error by denying his motion to exclude witness Brookhart's in-court identification because Brookhart had previously identified a photograph of Hamrick which was obtained during detention which Hamrick alleges was unlawful.

■■ Turning to the question of illegal detention, we observe at the outset that Hamrick does not argue that his arrest was unlawful because the Florida vagrancy statute is now unconstitutional.[3] At the time of the arrest the statute had not been declared invalid by any court and, while a vagrancy conviction would have to be overturned, there is no bar to the use of evidence of other crimes obtained during

rick v. State, Fla.App.1970, 235 So.2d 360.

2. Florida Statutes § 856.02, F.S.A., provides as follows:

"Rogues and vagabonds, idle or dissolute persons who go about begging, common gamblers, persons who use juggling, or unlawful games or plays, common pipers and fiddlers, common drunkards, common night walkers, thieves, pilferers, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons who neglect their calling or employment, or are without reasonably continuous employment or regular income and who have not sufficient property to sustain them, and misspend what they earn without providing for themselves or the support of their families, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, idle and disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses or tippling shops, persons able to work but habitually living upon the earnings of their wives or minor children, and all able bodied male persons over the age of eighteen years who are without means of support and remain in idleness, shall be deemed vagrants, and upon conviction shall be subject to the penalty provided in § 856.03."

3. See Smith v. Florida, 1972, 405 U.S. 172, 92 S.Ct. 848, 31 L.Ed.2d 122, and Papachristou v. City of Jacksonville, 1972, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed. 110.

incarceration for violation of a law which was valid when the arrest was made. United States v. Kilgen, 5 Cir. 1971, 445 F.2d 287. What Hamrick does contend is that even under the broad language of Florida Statutes § 856.02, F.S.A., there was no probable cause for his arrest for vagrancy since he presented proper identification and gave a valid reason for being present in the shopping center during business hours. The district court made no finding on the legality of the arrest and, if this issue was crucial to our holding in this opinion,[4] we would most likely remand the case for an evidentiary hearing. However, we need not pass on the question since we hold that the in-court identification by Brookhart was properly admissible even assuming, *arguendo*, that the arrest was effected without the requisite probable cause.

Although Hamrick relies heavily upon United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 1967, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, we find those decisions inapposite to the facts of this case. In *Wade* and *Gilbert* the Supreme Court was concerned with pretrial line-ups which were suggestive and which increased, to an unacceptable degree, the risk of misidentification of the suspect by witnesses for the prosecution. In the case at hand there is no evidence or allegation at any point in the record which would even hint that the photographic identification procedures were suggestive. A hearing was held outside the presence of the jury and Hamrick's counsel was given full opportunity to cross-examine the policeman who displayed the group of photographs to the witnesses. The eight photographs, which were turned over to Hamrick's counsel and later introduced into evidence by him, were all the same size and were all taken by the same camera.

Two of the three witnesses could not recognize Hamrick's photograph. There was no showing that the photographic identification procedure was "so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification", and Hamrick is not entitled to relief under *Wade* and *Gilbert*. Simmons v. United States, 1968, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247; United States v. Ervin, 5 Cir. 1971, 436 F.2d 1331; United States v. Rogers and Kent, 5 Cir. 1972, 455 F.2d 407; see United States v. Sikes, Jenkins & Sanders, 5 Cir. 1972, 456 F.2d 1290.

Aside from the *Wade-Gilbert* argument, however, Hamrick contends that Brookhart's in-court identification was "fruit of the poisonous tree" and inadmissible under Davis v. Mississippi, 1969, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676.[5] In *Davis* the local police department was in possession of fingerprints which were believed to be those of a suspected rapist. In an attempt to discover the suspect's identity the police began rounding up various persons and taking them into custody for the purpose of obtaining their fingerprints and comparing them with the fingerprints of the suspect. While the defendant Davis was being unlawfully detained in this manner police took a set of his fingerprints which was subsequently introduced at his trial for rape. Unimpressed by the reliability of the evidence,[6] the Supreme Court reversed the conviction and held that the fingerprints should have been suppressed as evidence seized in violation of the Fourth Amendment. Although the court did not decide the question it indicated strongly in dicta that had the police bothered to take an additional set of fingerprints at a time when Davis was being legally detained, that additional set would have been admissible despite the prior Fourth Amendment violation.

---

4. See, e. g., United States v. Seay, 5 Cir. 1970, 432 F.2d 395, 400.

5. See this court's decision in Mills v. Wainwright, 5 Cir. 1969, 415 F.2d 787.

6. Compare United States v. Wade, supra, and Gilbert v. California, supra, where the Supreme Court was concerned with the unreliability of eye-witness identifications.

Davis v. Mississippi, supra, at Note 4; Bynum v. United States, D.C.Cir. 1959, 104 U.S.App.D.C. 368, 262 F.2d 465; Bynum v. United States, D.C.Cir. 1960, 107 U.S.App.D.C. 109, 274 F.2d 767; See United States ex rel. Gockley v. Myers, 3 Cir. 1971, 450 F.2d 232, at 245 (dissenting opinion of Judge Adams).

Applying the rationale in *Davis* to the facts of this case we note that Brookhart's in-court identification was obviously not obtained while Hamrick was being held in police custody for violating the vagrancy statute. And since we are concerned here with the exclusionary rule and its deterrent effect on unlawful police conduct, we find it significant that the police in this case were not engaged in any mass round-up of suspects as was present in *Davis*. See United States v. Edmons, 2 Cir. 1970, 432 F.2d 577. We hold, therefore, that Brookhart's in-court identification of petitioner was properly admitted into evidence.

 Of course, at Hamrick's trial evidence of the photographic identification did come before the jury and, continuing in the assumption that the detention was unlawful, this evidence would normally be excludable under *Davis*. An examination of the record reveals, however, that the testimony concerning the pre-trial photographic identification was brought out on cross-examination by defense counsel. On the motion to suppress, the state trial judge, while refusing to prevent the in-court identifications, informed defense counsel that he would disallow evidence of previous photographic identifications. The prosecuting attorney responded that the state would elicit only in-court identifications and would not go into the photographic identification. Hamrick's counsel then replied that if the court allowed the in-court identifications into evidence the defense would have to explore the photographic identifications in order to show that two witnesses were unable to recognize Hamrick's photograph, and that the third witness had difficulty making an identification. When the jury returned, Hamrick's counsel adopt-

ed this strategy and questioned each witness about viewing the photographic line-up. Although officer Purcell did give a rather unresponsive answer on direct examination by stating that Brookhart identified a photograph of Hamrick, this testimony was not objected to by defense counsel, and on cross-examination defense counsel elicited the very same testimony from Purcell and discussed it at length. In short, evidence of the photographic identification procedures was introduced by the defense as part of its trial strategy and there is no cause for reversal on this point. See United States v. Davis, 5 Cir. 1971, 443 F.2d 560.

The denial of the petition by the district court is hereby .

Affirmed.